

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
METITO (OVERSEAS) LTD.,

            Plaintiff,

    -against-

GENERAL ELECTRIC CO. and JOHN DOES 1-20,

           Defendants.

------------------------------------------------------------x

05 Civ. 9478 (GEL)

**OPINION AND ORDER**

Richard Turyn and Vano I. Haroutunian, Ballon Stoll Bader & Nadler, P.C., New York, NY, for plaintiff.

Joytin Hamid and David H. Bernstein, Debevoise & Plimpton LLP, New York, NY, for defendants.

GERARD E. LYNCH, District Judge:

    Defendant moves to dismiss plaintiff's complaint on the ground of forum non conveniens. The motion will be denied.

### BACKGROUND

I.    Plaintiff's Allegations

    According to the amended complaint, plaintiff Metito (Overseas) Ltd. ("plaintiff" or "Metito"), a company organized under the laws of the United Kingdom, has been involved in the water infrastructure and processing industry since 1958. (First Amended Complaint ("Compl.") ¶ 11.) The company's activities include "research, development, design, configuration, facilities construction, operation, maintenance, repair, upgrading, replacement, marketing, licensing, sale, and leasing of water treatment, purification, desalination, and related systems." (Id. ¶ 12.) Due

to "decades spent developing and compiling" various forms of "proprietary information and trade secrets," Metito claims to enjoy "legitimate competitive advantages" in the Middle East, North Africa, and South Asia (the "Local Markets"). (Id. ¶ 14.) Plaintiff's trade secrets are the synthesis of, inter alia, the company's advanced knowledge of water processing science and its familiarity with the Local Markets. (Id. ¶ 15.) In order to protect its secrets, Metito requires its employees to sign employment contracts with confidentiality and non-competition clauses. (Id. ¶¶ 20, 21.)

Plaintiff claims that defendant General Electric Co. ("defendant" or "GE") entered the water infrastructure and processing industry only in 1999 and that defendant is now "working to lure Metito's high-level employees to leave their jobs at Metito and to join GE, bringing Metito's trade secrets" with them. (Id. ¶ 23.) The complaint specifies three employees that defendant has already succeeded in hiring away from plaintiff:

- Karim Nasr, the former head of Metito's operations in Egypt;
- Khaled Salah, Metito's former Sales Manager in Cairo, Egypt; and
- Prashnat Sonmale, Metito's former Senior Proposals Engineer in Sharjah, United Arab Emirates ("U.A.E.").

(Id. ¶ 25.) The complaint also identifies seven employees that defendant has allegedly attempted to hire away from Metito:

- Mohammed Dabouk, Metito's Group Operations Manager in Sharjah, U.A.E.;
- Omar Al Zou'be, Metito's Branch manager in Abu Dubai, U.A.E.;
- Walid Madwar, Metito's Sales Manager in Saudi Arabia;
- Mamdouh Alaqabawi, a Metito Engineer in Cairo, Egypt;
- Ibrahim al Qaq, an International Sales Manager in Metito's Chemical Sales Division in the U.A.E.
- Walid Ismael, a Senior Sales Engineer in the Cairo, Egypt office; and
- Walid Oraby, Metito's Country Manager in Qatar.

(Id. ¶ 26.)

Plaintiff claims that in hiring away or attempting to hire away these ten employees, defendant has engaged in unfair competition, wrongly interfered with contractual relationships, misappropriated trade secrets, and committed trade defamation. (Id. ¶¶ 32-59.)

II.     Procedural History

Plaintiff filed its original complaint and a motion for a preliminary injunction in November 2005, and defendant moved to dismiss for forum non conveniens shortly thereafter. At a hearing held on December 16, 2005, the Court denied plaintiff's motion, holding that plaintiff had not established a likelihood of irreparable injury, a likelihood of success on the merits, or a balance of hardships tilting in its favor. (12/16/05 Tr. 33-38; D. Mem. in Support of Mot. to Dismiss ("D. Mem.") at 3.) The Court also set a briefing schedule for defendant's motion to dismiss. Before the Court ruled on that motion, however, plaintiff filed an amended complaint, rendering moot the motion to dismiss the original complaint. (See 2/23/06 Order at 2 (denying as moot defendant's motion to dismiss).) Defendant then filed the instant motion, asking the Court to dismiss the amended complaint, again on the basis of forum non conveniens. According to defendant, the U.A.E. provides a more convenient forum for the case.

### DISCUSSION

I. Standard on a Motion to Dismiss for Forum Non Conveniens

"*[F]orum non conveniens* is a discretionary device permitting a court in rare instances to dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim." Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 100 (2d Cir. 2000) (citation and internal quotation marks omitted). In evaluating whether to dismiss for forum non conveniens, a district court generally engages in a three-step analysis. Norex Petroleum Ltd. v. Access Indus., Inc.,

416 F.3d 146, 153 (2d Cir. 2005); Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 70 (2d Cir. 2003). First, the court determines the degree of deference that should be afforded the plaintiff's choice of forum. Id. Second, the court considers whether the defendant has demonstrated that an adequate alternative forum exists. Id. If the defendant fails to make that showing, the inquiry ends, and the court must deny the motion. PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 73 (2d Cir. 1998). If there is an adequate alternative forum, however, the court proceeds to the third step of the analysis, and weighs the private and public factors involved, to determine, based on "the relative hardships involved, whether the case should be adjudicated in the plaintiff's chosen forum or in the alternative forum suggested by the defendant." Pollux Holding, 329 F.3d at 70; see Iragorri v. United Techs. Corp., 274 F.3d 65, 73-75 (2d Cir. 2001) (en banc). In order to prevail, defendant must demonstrate, at a minimum, that "the chosen forum is . . . genuinely inconvenient and the [alternative] forum significantly preferable." Bigio v. Coca-Cola Co., 448 F.3d 176, 179 (2d Cir. 2006) (citation and internal quotation marks omitted).

The doctrine of forum non conveniens is "flexib[le] based on the facts and circumstances of a particular case," Alcoa S. S. Co. v. M/V Nordic Regent, 654 F.2d 147, 155 (2d Cir. 1978) (en banc), and a district court has broad discretion in deciding whether dismissal is appropriate. Norex Petroleum, 416 F.3d at 153.

Here, the Court need not conclusively resolve the merits of each stage of the three-step inquiry. Even assuming that plaintiff's choice of forum is entitled only to modest deference and that the U.A.E. provides an adequate alternative forum, the private and public factors do not warrant dismissal, and defendant's motion must therefore be denied.

## II. The Deference Afforded Plaintiff's Choice

"[A] plaintiff's choice of forum is presumptively entitled to substantial deference." Gross v. British Broad. Corp., 386 F.3d 224, 230 (2d Cir. 2004); see Piper Aircraft Co. v. Reyno, 454 U.S. 223, 255 (1981); Norex Petroleum, 416 F.3d at 154; Pollux Holding, 329 F.3d at 70-71. The precise degree of deference may vary, however, depending on the circumstances of the case. The more it appears that the forum choice is motivated by illegitimate "forum-shopping reasons," for example, "the less deference the plaintiff's choice commands." Iragorri, 274 F.3d at 72. Conversely, the more it appears that the plaintiff's choice has been dictated by "valid" reasons — perhaps most importantly, considerations of convenience — "the greater the deference that will be given to the plaintiff's forum choice." Id. at 71-72. A foreign plaintiff's choice of a United States forum will typically not be entitled to substantial deference, because there is little reason to assume that the foreign plaintiff has chosen the forum for its convenience. Id. at 71.

Ostensibly applying these standards, defendant attempts to overcome the "substantial deference" to which the plaintiff's choice is presumptively entitled, and argues that plaintiff's choice is instead due no deference whatsoever. (D. Mem. at 9.) This argument, which is based primarily on the fact that plaintiff is foreign and on a vague allegation that plaintiff has engaged in forum shopping, is clearly incorrect. Even assuming, as defendant argues, that plaintiff was motivated in part by forum shopping — which is dubious[1] —that would not mean that

---

[1] Defendant's argument that Metito brought suit in New York for illegitimate reasons is based almost entirely on the facts surrounding only one of the ten employees at issue in this case (D. Mem. at 10). Defendant also asserts without elaboration that Metito's decision to sue in New York was "designed perhaps to try to pressure GE." (D. Reply Mem. at 3.) Such vague objections based on a small minority of the employees involved do not defeat plaintiff's

plaintiff's forum choice is entitled to "no" deference, but rather to "less" deference. See Ramirez de Arellano v. Starwood Hotels & Resorts Worldwide, Inc., --- F. Supp. 2d ----, 05 Civ. 10848 (CM), 2006 WL 2589416, at *4 (S.D.N.Y. Aug. 17, 2006) ("[W]here the choice indicates forum-shopping, it is entitled to less deference."); Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp., 421 F. Supp. 2d 741, 755 (S.D.N.Y. 2006) ("[W]here it appears that a plaintiff has chosen a U.S. forum because of forum-shopping reasons, less deference will be afforded plaintiff's choice . . . ."). Similarly, the fact that plaintiff is foreign does not, as defendant argues, render the forum choice completely undeserving of respect. See Wiwa, 226 F.3d at 101 ("*[A]ny* plaintiff's selection of a forum is entitled to deference . . . .") (emphasis added); Murray v. British Broad. Corp., 81 F.3d 287, 290 (2d Cir. 1996) ("[S]ome weight must still be given to a foreign plaintiff's choice of forum."); see also Norex Petroleum, 416 F.3d at 154 ("*[L]ess* deference is afforded a foreign plaintiff's choice of a United States forum." (emphasis added) (citation and internal quotation marks omitted)); Ravelo Monegro v. Rosa, 211 F.3d 509, 514 (9th Cir. 2000) ("[L]ess deference is not the same thing as no deference."); Skelton Fibres Ltd. v. Canas, 96 Civ. 6031 (DLC), 1997 WL 97835, at *4 (S.D.N.Y. Mar. 6, 1997) ("Even with this lowered deference . . . this reduced weight is not an invitation to accord a foreign plaintiff's selection of an American forum *no* deference since dismissal for *forum non conveniens* is the exception rather than the rule." (citation and internal quotation marks omitted)).

At most, therefore, defendant might be able to overcome the presumption in favor of "substantial" deference and establish that the deference here should be reduced; defendant has failed to demonstrate, however, that plaintiff's choice is entitled to "no" deference at all.

---

entitlement to some degree of deference.

Accordingly, the Court will grant *some* degree of deference to plaintiff's forum choice. Whether that deference is modest or substantial does not, for reasons explained in Part IV, infra, affect the outcome of defendant's motion to dismiss. See Doe v. Hyland Therapeutics Div., 807 F. Supp. 1117, 1123 (S.D.N.Y. 1992) (declining to determine degree of deference due the plaintiff's forum choice where it would not affect outcome of motion to dismiss for forum non conveniens).

III. The Existence of an Adequate Alternative Forum

The Court likewise need not decide whether an adequate alternative forum exists, because, as explained in Part IV, infra, even assuming defendant is correct that such a forum exists in the U.A.E., defendant has failed to demonstrate that the balance of public and private interest factors weighs strongly enough in its favor to overcome the deference due to plaintiff's choice of forum. See Krepps v. Insead, 04 Civ. 3260 (RWS), 2004 WL 2066598, at *2 (S.D.N.Y. Sept. 16, 2004) (assuming for the purposes of argument that defendant's preferred forum was adequate, but concluding nevertheless that the balance of private and public interest factors did not weigh sufficiently in defendant's favor so as to warrant dismissal for forum non conveniens); Haywin Textile Prods., Inc. v. Int'l Fin. Inv., 137 F. Supp. 2d 431, 436 (S.D.N.Y. 2001) (same); Hatzlachh Supply Inc. v. Tradewind Airways Ltd., 659 F. Supp. 112, 115 (S.D.N.Y. 1987) (same).

IV. The Balance of Private and Public Interest Factors

The last step — and in this case, dispositive step — in the forum non conveniens analysis is to evaluate the overall comparative convenience of the forums at issue by considering the various private and public interest factors involved. The private interest factors include "the relative ease of access to sources of proof; availability of compulsory process for attendance of

unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." Iragorri, 274 F.3d at 73-74, quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947). "In considering these factors, the court is necessarily engaged in a comparison between the hardships defendant would suffer through the retention of jurisdiction and the hardships the plaintiff would suffer as the result of dismissal and the obligation to bring suit in another country." Id. at 74.

The public interest factors include "(1) administrative difficulties associated with court congestion; (2) the unfairness of imposing jury duty on a community with no relation to the litigation; (3) the local interest in having localized controversies decided at home; and (4) avoiding difficult problems in conflict of laws and the application of foreign law." DiRienzo v. Philip Services Corp., 294 F.3d 21, 31 (2d Cir. 2002) (citation and internal quotation marks omitted); see also Iragorri, 274 F.3d at 74.

To prevail, a defendant normally has the burden to demonstrate that both the private and public interest factors "strongly" favor dismissal. DiRienzo, 294 F.3d at 30-31; see PT United Can Co., 138 F.3d at 74 (noting that the defendant bears the burden to demonstrate that the balance of factors "tilts strongly in favor of the purported alternative forum"); see also Manu Intern., S.A. v. Avon Prods., Inc., 641 F.2d 62, 65 (2d Cir. 1981) ("'[T]he plaintiff's choice of forum is to be respected unless the balance of both public and private interests strongly justifies a transfer,'" quoting Calavo Growers of Cal. v. Generali Belgium, 632 F.2d 963, 969 (2d Cir. 1980) (Newman, J. concurring)). Moreover, "even where the degree of deference is reduced, the action should be dismissed only if the defendant demonstrates that "the chosen forum is . . . genuinely inconvenient and the [alternative] forum significantly preferable." Bigio, 448 F.3d at

179 (citation and internal quotation marks omitted); see Iragorri, 274 F.3d 74-75 ("[A] lesser degree of deference to the plaintiff's choice . . . does not guarantee dismissal. . . . The action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the [alternative] forum significantly preferable."); see also Bank of Credit & Commerce Int'l (Overseas) Ltd. v. State Bank of Pakistan, 273 F.3d 241, 246 (2d Cir. 2001) (noting that the defendant bears the burden of proof on all elements of the motion at this stage). Here, regardless of whether the Court requires defendant to show that the balance of factors "strongly" favors dismissal or merely requires the defendant to show that New York is "genuinely inconvenient" and the U.A.E. "significantly preferable," defendant has failed to meet its burden.

A weighing of the private factors shows that the U.A.E. is a marginally more convenient forum, but not that it is significantly preferable to New York or that New York is genuinely inconvenient. Defendant correctly notes that because most of the witnesses and evidence are located abroad, litigation in the United States is likely to be more costly and inconvenient than litigation in the U.A.E. See SMT Shipmanagement & Transp. Ltd. v. Mar. Ordaz C.A., 00 Civ. 5789 (GEL), 2001 WL 930837, at *7 (S.D.N.Y. Aug. 15, 2001). Defendant, however, has exaggerated the inconvenience of litigating the case in New York and the convenience of litigating it in the U.A.E. All of the evidence and witnesses are not located in the same place. If the case is adjudicated in the U.A.E., several witnesses may have to undertake regional travel from Egypt (see Rashad Dec. ¶ 2), Qatar (Oraby Dec. ¶ 1), Saudi Arabia (Madwar Dec. ¶ 1), and/or Bahrain (Sonmale Dec. ¶ 2). Other witnesses or documents may have to travel farther – for example, from Italy (Compl. ¶ 8(f)-(h); D. Mem. at 5, 15), and from the United States (P. Mem. in Opp. to D. Renewed Mot. to Dismiss ("P. Mem.") at 6; D. Mem. at 6-7, 15; Compl.

¶¶ 7, 9 ). Indeed, defendant has conceded that the employees with "global responsibility for GE Infrastructure Water & Process Technologies (and therefore global responsibility for . . . water-related businesses)" are located close to New York (D. Mem. at 5),[2] and plaintiff claims that these employees "are in charge of the policy-making businesses expansion decisions that are at the core of th[e] Complaint." (P. Mem. at 2; see Compl. ¶¶ 6, 7; see also P. Mem. at 9 n.2.)

In any event, defendant's briefs do not identify a single potential witness who would be unable or unwilling to appear in New York. This is significant, as "such identification is generally required for a forum non conveniens dismissal." Haywin Textile Prods., 137 F. Supp. 2d at 436. Nor has defendant claimed that a substantial hardship would be imposed on the parties or witnesses by litigating in this forum. The absence of such a claim is unsurprising, given that both parties are multinational companies with full access to modern transportation and telecommunications. (See, e.g., Compl. ¶ 5 (explaining that Metito operates in several countries in the Middle East, as well as in the United States); D. Mem. at 4 (explaining that GE "is one of the ten largest companies in the world," with 146 water-related businesses "in numerous countries around the world").) For many years, courts in this Circuit have recognized that modern technologies can make the location of witnesses and evidence less important to the

---

[2] Defendant notes that the only U.S.-based GE employees who might have some connection to this case are located in states adjacent to New York, but that none are located in New York State itself. This raises the issue of whether a change of venue would be appropriate even if the Court denies defendant's motion to dismiss. See 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."). However, colloquy at the December 16, 2005, hearing makes clear that neither party seeks a transfer within the United States, and that defendant's motion to dismiss seeks to determine whether the case should be heard in New York or in the Middle East. (12/16/05 Tr. at 43:15-19.) Neither party has objected to this characterization of its position; nor has either party moved to transfer under § 1404(a).

forum non conveniens analysis, particularly where the parties are major corporations. See, e.g., DiRienzo, 294 F.3d at 30 ("'To the extent documents exist [overseas], advances in transportation and communication accord this issue less weight,'" quoting Itoba Ltd. v. LEP Group PLC, 930 F. Supp. 36, 44 (D. Conn. 1996)); Overseas Programming Cos. v. Cinematographische Commerz-Anstalt, 684 F.2d 232, 232 n.1 (2d Cir. 1982) ("[A]dvances in modern telecommunications and jet travel may further circumscribe a district court's discretion in dismissing a suit on the ground of forum non conveniens."); Manu Intern., S.A., 641 F.2d at 65 (demonstrating that, as early as 1981, there was much "sentiment in [the Second] Circuit for evaluating the forum non conveniens factors in light of the increased speed and ease of travel and communication"); Eclaire Advisor Ltd. v. Daewoo Eng'g & Constr. Co., 375 F. Supp. 2d 257, 265 (S.D.N.Y. 2005) ("In this day and age of rapid transportation and instant communications, the convenience of immediate physical proximity to documents, testimony, and other proof has become of less consequence to a *forum non conveniens* analysis, especially when, as here, two large and sophisticated parties are involved."); cf. Gross, 386 F.3d at 233 (noting that the burden of traveling to a different country for litigation "is likely a greater obstacle to an individual than to a large business corporation"). Both parties, moreover, have legal representation available to them in New York. Cf. Bigio, 448 F.3d at 180 (suggesting that location of counsel may be a relevant private interest factor).[3]

---

[3] In arguing that the private interest factors favor dismissal, plaintiff argues that defendant's claims of inconvenience "ring[] hollow when compared to the onerously higher burden [for both parties] of initiating a dozen or so repetitive proceedings in several countries" where defendant is alleged to have violated plaintiff's rights. (P. Mem. at 2.) It is far from clear, however, whether proceedings in more than one or two countries would be necessary to address the issues in the complaint. Moreover, it is not clear at this stage whether it would be appropriate for this Court to provide extraterritorial injunctive relief in all of the countries where

The public factors similarly do not indicate that the U.A.E. is significantly preferable to New York. While court congestion is always a serious issue in the Southern District of New York, defendant has not argued that court congestion is more of a problem here than in the U.A.E. Nor is it unfair to impose on New York jurors a lawsuit involving a major American business entity incorporated in this state, even though the dispute focuses on events taking place primarily in the Middle East. And, while defendant correctly points out that the U.A.E. "has a public interest in the proper interpretation of its non-compete and labor laws and in resolving disputes concerning alleged business torts committed within its borders" (D. Mem. at 13), New York State also has an interest in the conduct of "industrial giants like General Electric" that are incorporated in New York, and whose "far-flung activities" may affect perceptions of the United States and New York State in countries around the world. (P. Mem. at 16.)

Defendant is also correct that the Court generally has an interest in "avoiding difficult problems in conflict of laws and the application of foreign law." DiRienzo, 294 F.3d at 31. However, defendant fails to present a cogent argument as to why this factor substantially favors dismissal here. Though defendant argues in its reply brief that plaintiff concedes that only foreign law applies to its claims (D. Reply Mem. at 2), the Court discerns no such concession in plaintiff's brief; nor would such a concession be expected in view of plaintiff's reliance on United States statutory law in its complaint. (See Compl. ¶¶ 46-53; see also P. Mem. at 16.) Assuming there are differences in the relevant laws of the United States, the U.A.E., Egypt, and other countries with a connection to the case, it is possible that the law of several countries will

---

plaintiff might seek relief; neither party has briefed that issue in any meaningful way. Thus, in denying defendant's motion here, the Court does not rely on plaintiff's argument regarding the need to sue in multiple jurisdictions in the event of dismissal.

-12-

govern. Neither party has adequately presented its view on how the Court might resolve the choice-of-law issues. See generally White Plains Coat & Apron Co., Inc. v. Cintas Corp., 460 F.3d 281, 284-85 (2d Cir. 2006) (discussing choice-of-law rules for diversity cases brought in a New York forum); Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt, 407 F.3d 34, 50 (2d Cir. 2005) (same). Nor do the parties meaningfully address the extent to which U.A.E. courts might apply foreign law if this case were brought in that country.[4] In the absence of a more thorough exposition of these issues, the Court cannot find that defendant has met its burden of demonstrating that the interest in avoiding application of foreign law weighs substantially in favor of dismissal here.

In any event, even assuming that this Court must apply foreign law in this case, nothing in the record suggests that it would be "unusually difficult or burdensome" to do so. United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc., 216 F. Supp. 2d 198, 209 (S.D.N.Y. 2002). The Second Circuit, moreover, has cautioned "against an excessive reluctance to undertake the task of deciding foreign law, a chore federal courts must often perform." Manu Intern., S.A., 641 F.2d at 68; see Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co., 145 F.3d 481, 492 (2d Cir. 1998) (noting that the need to apply foreign law is a public interest factor favoring dismissal but is not necessarily dispositive); see also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. BP Amoco, PLC, 03 Civ. 200 (GEL), 2003 WL 21180421, at *10 (S.D.N.Y.

---

[4] Defendant concedes, however, that Egyptian law may apply to some of plaintiff's claims. (D. Mem. at 2, 9.) This concession is potentially significant, for if the U.A.E. courts would have to apply foreign law to some claims, then the fact that this Court would also have to apply foreign law would not tilt the balance in favor of dismissal. See DiRienzo, 294 F.3d at 32 ("[W]hile an Ontario court would likely apply American law to at least [some] claims . . . , an American court would likely apply Canadian law to [other] claims . . . . The interest in avoiding the application of foreign law therefore does not favor either forum.").

May 20, 2003) ("Because federal courts must often apply foreign law, and the means of pleading and proving foreign law are provided in the Federal Rules of Civil Procedure, interpreting the contracts according to English law, and instructing a jury on that law if this case should go to trial, are not burdens heavy enough to weight the balance of convenience strongly in favor of dismissing the action.").

In arguing that public interest factors warrant dismissal, defendant also claims that "the U.A.E. authorities have already enforced Metito's rights under the only contract at issue here, and [that] there is a compelling public interest in the principle of comity counseling against this Court granting additional remedies beyond those the U.A.E. authorities have imposed." (D. Mem. at 13.) This argument, however, is rooted in principles of res judicata and international comity; thus, even assuming defendant is correct, dismissal at this stage on forum non conveniens grounds would not be warranted. See Norex Petroleum, 416 F.3d at 150 ("United States recognition of a final foreign judgment may support dismissal of a related action in our courts, but on a ground of international comity more akin to *res judicata* than *forum non conveniens*."). The parties will have an opportunity at a later stage of the litigation to brief the Court on the relevance of any judgments rendered abroad.

## CONCLUSION

Though a weighing of the private and public interest factors indicates that litigating this case in the U.A.E. might be somewhat more convenient, defendant has failed to show that the U.A.E. is significantly preferable or that New York is genuinely inconvenient. Defendant's motion to dismiss for forum non conveniens is therefore denied.

SO ORDERED.

Dated: New York, New York
       November 7, 2006

                                                                                  GERARD E. LYNCH
                                                                    United States District Judge